## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | **Case No. 4:23-bk-02682-MJC** |
| | : | |
| **Mary L. Phillips,** | : | **Chapter 7** |
| | : | |
| Debtor, | : | |
| | : | |

⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮

| | | |
|---|---|---|
| **Mary L. Phillips,** | : | |
| | : | **Adversary No.: 4:24-ap-00054-MJC** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **U.S. Department of Agriculture,** | : | |
| **U.S. Department of Treasury,** | : | |
| | : | |
| Defendants. | : | |

⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮

## OPINION

Presently before the Court is the U.S. Department of Treasury's Motion to Dismiss the Complaint against U.S. Department of Treasury ("Treasury") and the U.S. Department of Agriculture ("USDA") and Treasury's Joint Motion to Strike the Complaint's Class Allegations. Doc. 16, 17.[1]  Both Motions were opposed by Plaintiff, Mary L. Phillips ("Plaintiff"). Doc. 40, 41.  For the reasons stated below, the Motion to Dismiss the Complaint against Treasury is granted and the Motion to Strike the Complaint's Class Allegations is Denied.

---

[1] Docket entries in the main bankruptcy case are noted as "BK Doc." and docket entries referring to this Adversary Proceeding are noted as "Doc."

# I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed the above captioned Chapter 7 bankruptcy case on November 29, 2023 and received a discharge on March 4, 2024. BK Doc. 12. Plaintiff included a FHA mortgage serviced by USDA on Schedule D of the bankruptcy schedules. BK Doc.1. Additionally, Plaintiff filed a Statement of Intention indicating the surrender of the mortgaged property located at 4937 Route 872, Austin, PA 16720. *Id.* Plaintiff did not provide notice to Treasury of her bankruptcy filing or her discharge. BK Doc. 1, 12.

After Plaintiff received her discharge, she alleges that USDA continued to attempt to collect the mortgage debt in violation of the discharge injunction by sending ongoing monthly billing statements. Doc. 2, ¶ 18. Plaintiff also alleges that the USDA took further steps to collect the debt and began offsetting her monthly Social Security payments in the amount $183.30 through the Treasury Offset Program ("TOP"). *Id.*[2] It is unclear from the record when the offset of the Plaintiff's Social Security payments began.

Plaintiff filed an Adversary Complaint on November 1, 2024. Doc. 1. Plaintiff filed an Amended Complaint on the same date. Doc. 2.[3] Plaintiff alleges that she filed the instant adversary proceeding to pursue a class action on behalf of herself and persons similarly situated including:

Persons who filed for bankruptcy protection in any U.S. Bankruptcy Court for [sic] on or after October 13, 1994, who:

    a. incurred pre-petition loans with USDA, whether as a borrower or co-signer;
    b. listed such loans on Schedule F of their bankruptcy filings;
    c. have never reaffirmed such pre-petition loan debt;
    d. were granted a discharge; and

---

[2] As discussed more fully below, TOP is the administrative collection arm of Treasury.
[3] Plaintiff's original filed complaint incorrectly indicated that the underlying bankruptcy had been filed in the Eastern District of Pennsylvania. The Amended Complaint corrected this error.

e.  have nonetheless been the subject to continued collection
    efforts by Defendants.

Doc. 2, ¶ 22.

On January 17, 2025, Defendants jointly filed a Motion to Strike Class Allegations ("Motion to Strike"), and Defendant Treasury filed a Motion to Dismiss the Adversary Complaint ("Motion to Dismiss"). Doc. 16, 17.  Defendants also filed a Motion to Stay Responsive Pleading Deadline Pending the Resolution of the Motion to Strike Class Allegations and Motion to Dismiss as to Treasury ("Stay Motion"). Doc. 18.

Plaintiff filed an Answer to the Stay Motion on February 20, 2025. Doc. 36.  The Plaintiff then filed an answer to the Motion to Strike and the Motion to Dismiss on March 7, 2025. Doc. 40, 41.  Oral Argument was presented on April 10, 2025.  The Stay Motion was granted at that hearing and the Motion to Strike was taken under advisement. Doc. 42, 43.  As directed by the Court, parties filed supplemental briefs.  Doc. 45, 46.

On May 13, 2025, Plaintiff filed a Notice of Supplemental Authority in Support of the Opposition to the Motion to Strike. Doc. 47.  On June 5, 2025, Defendants filed a Response to the Notice of Supplemental Authority. Doc. 51.  This matter is now ripe for disposition.

## II.  JURISDICTION

This Court has jurisdiction over this adversary complaint pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016.  These matters are core proceedings pursuant to 28 U.S.C. §157(b), 1331, and 1334(b).  Venue is proper pursuant to 28 U.S.C. §1409(a).  This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is made applicable to this proceeding under Fed. R. Bankr. P. 9014.

## III. DISCUSSION

### A. The Motion to Dismiss

#### 1. Legal Standard

Federal R. Civ. P. 12(b)(6) permits a motion to dismiss where the Plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012(b)). "To survive a motion to dismiss a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). The Third Circuit applies a two-part process to the review of Motions to Dismiss. *In re Webb*, 2013 WL 5934463, at *1 (Bankr. M.D. Pa. 2013). The court must first separate all factual and legal elements of the case and treat all factual elements as true. *Id.* Next, the court must look only to the facts in the case and determine if there is a "plausible claim for relief." *Id.*

The court, in reviewing a complaint, must accept factual allegations as true however a complaint is insufficient "if it tenders "naked assertion[s]" devoid of "further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557.). The complaint must show "facts sufficient to raise a right to relief above a speculative level". *Webb*, 2013 WL 5934463, at *2.

#### 2. Treasury's Motion to Dismiss

The primary purpose of a bankruptcy case is to grant a "fresh start" to the "honest but unfortunate debtor" by discharging their debt. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (*citing to Grogan v. Garner*, 498 U.S. 279, 286 (1991)). The discharge of debt upon completion of the bankruptcy case "operates as an injunction against the commencement

4

or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such a debt is waived." 11 U.S.C. §524(a)(2).[4]

A violation of the discharge injunction occurs where there is an act to collect a debt or an act that has "the practical effect of coercing payment of a discharged debt." *In re Krisiak*, 613 B.R. 606, 612 (Bankr. M.D. Pa. 2020) (*citing In re Paul*, 534 F.3d 1303, 1308 (10th Cir. 2008) (citations omitted); *see also In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006). For the Court to find a discharge injunction violation, the Plaintiff must show, with clear and convincing evidence:

(1) a valid order of the court existed;
(2) the defendant had knowledge of the order; and
(3) the defendant disobeyed the order.

*In re Lienhard*, 498 B.R. 443, 453 (Bankr. M.D. Pa. 2013) (*citing Cal. Coast Univ. v. Aleckna (In re Aleckna),* 494 B.R. 647, 654 (Bankr. M.D. Pa. 2013); *In re Meyers,* 344 B.R. 61, 65 (Bankr. E.D. Pa. 2006).

The Plaintiff in this case filed for Chapter 7 bankruptcy relief and obtained a bankruptcy discharge in March 2024 under §727. Plaintiff alleges that after she obtained her discharge the USDA, through the TOP, offset the Plaintiff's Social Security payments to collect on the USDA serviced mortgage.[5] However, Treasury contends that the TOP collects debt in a purely ministerial role and has no authority to review, outside of the certification by the agency requesting offset, the validity of the debt and is therefore an improper party to the case. In furtherance of their argument that Treasury is an improper party, Treasury contends that they were not noticed of the bankruptcy filing or discharge order. Plaintiff does not dispute that Treasury was not a notice party to the

---

[4] Unless otherwise noted, all further statutory references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.
[5] The final offset of the Plaintiff's Social Security was in December 2024.

5

bankruptcy filing or discharge.[6]  Nor does the Amended Complaint allege Treasury received notice of the Plaintiff's discharge at any time prior to the filing of the adversary proceeding.

### i. Treasury's TOP Program

The Debt Collection Improvement Act ("DCIA"), 31 U.S.C. §§3701 *et seq*, authorized the TOP to collect non-tax debts on behalf of federal and state agencies through the offset of Treasury payments, such as tax refunds and social security payments.  *See Johnson v. United States Department of Treasury*, 300 Fed. Appx. 860, 862 (11th Cir 2008); *See* 31 U.S.C. § 3716(a).  The DCIA requires federal agencies to refer non-tax federal debts for collection through TOP once the debts are more than one hundred twenty (120) days delinquent.  *See* 31 U.S.C. §3716(c)(6)(A).  At that time, the agency ("creditor agency") must certify the debt is eligible for collection by offset and that all due process protections have been met.  *See* 31 C.F.R. §285.5(d)(3)(ii), (d)(6).  Where the creditor agency properly certifies the debt, Treasury must offset the debt.  *See Johnson*, 300 Fed. Appx. at 862 (*citing* 31 U.S.C. §3716(c)(1)(A)).  Once the debt has been certified, Treasury's post-certification actions are largely procedural.  Treasury notifies the debtor in writing of the date the offset shall begin, the name of the creditor agency, and a contact person within the creditor agency that can address any questions or concerns regarding the offset, inclusive of disputing the debt.  *See* 31 C.F.R. §285.4(f)(1).

While there is a mechanism for the correction of erroneous offset payments, it is limited. 31 C.F.R. §285.5(i)(2), (3). Treasury is permitted, upon learning from "a paying agency" of erroneous payments, to notify the creditor agency of the error and upon the direction of the creditor agency Treasury may deduct the offset from future payments to the agency, or upon Treasury's

---

[6] During the hearing on April 10, 2025, both Defendant and Plaintiff's counsel agreed that Treasury had not been directly noticed of the bankruptcy filing.  Plaintiff's counsel argued that Treasury may be subject to constructive notice through notices to USDA of the bankruptcy filing.

request, the creditor agency shall return the improperly offset funds to Treasury. *Id*. However, Treasury does not have the authority to cease an offset and refund those funds to the individual debtor. *See Omegbu v. U.S. Department of Treasury*, 118 F.App'x 989, 991 (7th Cir. 2004); *Duronia v. Parker*, 2024 WL 3898010, at *3 (D.N.J. 2024); 31 C.F.R. §285.5(i)(3).

Courts have been largely uniform in their finding that the TOP is a non-discretionary function of Treasury with no authority to review the validity of the debts outside of the certification by the creditor agency. The Court found in *Taveres v. United States* that the obligation to provide due process protections as to the validity of the debt does not lie with TOPS but "rather that obligation lies with the creditor agency that is attempting to offset the debt." *Tavares v. United States*, 2014 WL 4351532, at *3 (M.D. Pa. 2014) (*quoting Walker v. United States,* 2014 WL 2505669, at *5 (M.D. Pa. 2014)). Courts have also held that the TOP's function cannot be avoided where the creditor agencies have properly certified the debt. *See McLean v. United States,* 2019 WL 2618108, at *4 (M.D. Pa. 2019) (*citing* 31 U.S.C. § 3716(c)(1)(A); *Johnson*, 300 Fed. Appx. at 862)).

In a case cited by Treasury, the Bankruptcy Court in *In Re Scott* found that while the debt being addressed is a state debt being certified by a state creditor agency for collection with the TOP, the application of the rules of the TOP program remain the same. *See In re Scott*, 2016 WL 492475, at *6 (Bankr. D.D.C. 2016) (*citing Tavares*, 2014 WL 4351532, at *3.) The Court in *Scott* stated that "[d]ecisions uniformly treat the Secretary as not required to ascertain whether, in fact, a debt certified as eligible for setoff is ineligible for setoff because (contrary to the certification) the debt is not legally enforceable." *Id*. at *7.

## ii. Collection by the TOP is Ministerial.

USDA began to collect the discharged mortgage debt in the amount of $183.30 per month by offsetting Plaintiff's monthly Social Security payments through the TOP. Doc. 2, ¶ 18. For the USDA to participate in the TOP, USDA *must* have certified the debt via the TOP program requirements under 31 C.F.R. §285.5(d)(3)(i).[7] With a proper certification by USDA in hand Treasury has no authority, barring notice by USDA to cease collection of the debt. *See Johnson*, 300 Fed. Appx. at 862; 31 U.S.C. §3716(c)(1)(A). Even where notice of the error is provided by a third party, Treasury is limited to notifying the creditor agency of the error and awaiting further action on their part. *See* 31 C.F.R. §285.5(i)(3).

The TOP appears to be a purely ministerial function by Treasury. As the Plaintiff clarified in her opposition to the Motion to Dismiss, a ministerial duty only exists where the law or judicial decree is so clear that there is nothing left to the discretion of the official executing on same. *See In Re Soares*, 107 F.3d 969, 974 (1st Cir. 1997). Treasury lacks any authority to review the validity of the debt or to cease an offset without notification from the creditor agency. *See Johnson*, 300 Fed. Appx. at 862; 31 U.S.C. §3716(c)(1)(A); 31 C.F.R. §285.5(i)(3). More importantly, there is no mechanism within the statute for Treasury to review the validity of the debts referred by the creditor agency. *Id*. As determined in the *Scott* case, Treasury would have no way of knowing whether or not a debt was legally enforceable and "the setoff program's efficient administration necessarily depends on the Department of the Treasury being allowed to accept s [sic] state's representation that the debt certified is legally enforceable." *Scott*, 2016 WL 492475 at *7.

---

[7] In order to collect a debt by administrative offset Treasury requires the debt be (1) past-due in the amount stated by the creditor agency; (2) legally enforceable; (3) less than ten years delinquent, unless the debt may be legally offset if more than ten years delinquent; (4) more than $25; and (5) not secured by collateral subject to a pending foreclosure action. *See* 31 C.F.R. §285.5(d)(3)(i).

Plaintiff's counsel attempts to situate the entire government as "a single entity" for the purposes of both discharge injunction violations and notice of the bankruptcy filing. This Court does not find this argument persuasive. Plaintiff is attempting to extend the §553 mutuality rule that permits one entity within the federal government to collect a debt on behalf of another federal agency creditor as a "single unitary creditor" to discharge injunction violation actions directed at a single agency. *See In re AEH Trucking Co., LLC*, 586 B.R. 566, 573-574 (Bankr. M.D. Pa. 2018). While mutuality for the purposes of acting as a single unitary creditor exists in setoff, it is difficult to justify extending liability for a discharge injunction violation to an entity with no authority to cease setoff and statutorily limited recourse upon discovery that a debt is unenforceable. Treasury is entirely reliant on the representations of USDA in their certification and cannot protect itself from potential discharge violations. *See Johnson*, 300 Fed. Appx. at 862; 31 U.S.C. §3716(c)(1)(A).

Even where Treasury is provided with notice of a bankruptcy filing from a paying agency, Treasury is limited to notifying USDA of the potential error and actions that USDA *may* take. *See* 31 C.F.R. §285.5(i)(3). This Court cannot find liability for a discharge injunction violation where a creditor, unitary or otherwise, has been statutorily prevented from taking action to prevent such a violation. An outcome where Treasury is held liable for an action they cannot prevent borders on absurd where the party alleged to have directly violated the discharge injunction remains available to pursue for such liability, specifically the USDA.

Finally, this Court returns to the original elements of a discharge injunction violation. While it is clear there was a valid discharge order, it is also clear that Treasury did not receive notice of the bankruptcy filing or the bankruptcy discharge. Plaintiff's Amended Complaint does not allege that Treasury had notice. Plaintiff's counsel conceded during the hearing conducted on

9

April 10, 2025 that the Treasury had not been directly noticed of the bankruptcy petition or discharge. That said, Treasury, acting in a ministerial role, has no authority to look behind the referral certifications provided by creditor agencies, such as the USDA. Therefore, without knowledge of the valid discharge order Treasury cannot be held liable for a discharge injunction violation.

Treasury has no discretion to cease collection of a properly certified debt from a creditor agency and is not a proper party to this action. This Court finds that Plaintiff has failed to state a claim upon which relief can be granted and the Motion to Dismiss as to the United States Department of Treasury is hereby granted.

### B. Motion To Strike Class Allegations filed by Defendants

#### 1. Legal Standard

For a motion to strike class allegations to be successful at the pleading stage the Defendant must show that on the face of the complaint the requirements to maintain a class action "cannot be met." *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 497 (W.D. Pa. 2019) (*citing Landsman & Funk P.C. v. Skinder Strauss Assoc.*, 640 F.3d 72, 93 n. 30 (3d Cir. 2011). Importantly, a motion to strike may only be granted prior to certification of the class on grounds that are entirely distinct from the class certification requirements pursuant to Fed. R. Civ. P. 23(a), which is incorporated into Bankruptcy Rule 7023. *See In Re Padilla*, 389 B.R. 409, 448 (Bankr. E.D. Pa. 2008) (*citing Rahman v. Smith & Wollensky Restaurant Group, Inc.,* 2008 WL 161230, *3 (S.D.N.Y. 2008); *accord In re Initial Public Offering Securities Litigation,* 2008 WL 2050781, *2 (S.D.N.Y. 2008)). Rule 23(a) provides that a class may be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical to the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

It is well established that Courts in the Third Circuit frequently deny motions to strike as premature and find that the proper avenue for such a motion is at the class certification stage. *See Dobkin v. Enter. Fin. Grp.*, Inc., 2014 WL 4354070, at *6 (D.N.J. 2014) (*citing P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia,* 2011 WL 5127850, at *3–6 (E.D. Pa. 2011); *Humphreys v. Budget Rent A Car Sys. Inc.,* 2014 WL 1608391, at *11 (E.D. Pa. 2014). Third Circuit Courts have adopted a "rigorous analysis" requirement in reviewing class certification decisions and have held that where there is no class certification motion and no discovery yet conducted, a motion to strike class allegations is functionally a premature opposition to a class certification motion. *See Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 640 F.3d 72, 93 (3d Cir. 2011); *Korman v. Walking Co*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007). The Court in *Korman v. Walking Co* stated "the bulk of Defendants' arguments in favor of its Motion are arguments against class certification. It would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion." *Korman*, 503 F. Supp. 2d at 762. (*quoting Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 3422198, at *3 (N.D. Cal. 2006)).

The Second Circuit has taken a similar position.[8] "[C]ourts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred

---

[8] While there is not extensive authority in the Third Circuit with regard to the treatment of nationwide classes in bankruptcy, this is well trodden ground in the Second Circuit, particularly in the Eastern District of New York. Judge Stong of the United States Bankruptcy Court for the Eastern District of New York has written thorough Opinions that exhaustively review the issues surrounding nationwide class action certifications and subject matter jurisdiction of the bankruptcy court over such actions. *See In Re Ajasa*, 627 B.R. 6 (Bankr. E.D.N.Y. 2021)*; In Re Golden,* 671 B.R. 544 (Bankr. E.D.N.Y. 2025).

to the class certification phase." *Greene v. Gerber Prods. Co.*, 262 F.Supp. 3d 38,53 (E.D.N.Y. 2017) (quoting *Mazzola v. Roomster Corp.*, 849 F. Supp 2d 395, 410 (S.D.N.Y. 2012); *See also Belfiore v. Proctor & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2017)( a motion to strike allegations of any type from a complaint under Rule 12f is rarely granted.); *In re Ajasa*, 627 B.R. 6, 17-18 (Bankr. E.D.N.Y. 2021) (*citing Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012)). In *Kassman v. KPMG, LLP* the Court concluded that a motion to strike is premature if the issues raised are the same as those that would be decided at the class certification motion stage. *See Kassman v. KPMG, LLP*, 925 F.Supp.2d 453 (S.D.N.Y. 2013) (*citing Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012)).

### 2. Plaintiff *could* maintain an alternate class

To date, Plaintiff has not filed a motion to certify the class and no discovery has commenced. As such, our review must be limited to the appropriateness of a motion to strike the class allegations prior to discovery and a motion to certify the class. As stated above, Courts require a rigorous analysis of class certification motions and are inclined to deny a motion to strike prior to the class certification motion as premature.

For the Court to find that the Motion to Strike is meritorious the Defendant must show a failure by the Plaintiff to demonstrate that class treatment is unsuitable on the face of the complaint. *Padilla*, 389 B.R. at 448 (*citing* Joseph M. McLaughlin, 1 *McLaughlin on Class Actions* §3.4 (Westlaw 2008)). Further, the Defendant must demonstrate that this burden can be met in a manner that is separate from the Rule 23 factors used to analyze a class certification motion. *Id.* (*citing Rahman*, 2008 WL 161230 at *8). Where the Court concludes that no matter what the evidence may show upon discovery a class cannot be maintained, a Motion to Strike should be granted. *Ajasa*, 627 B.R. at 19.

12

Here, the Defendants argument is rooted solely in the contention that the Plaintiff cannot maintain a nationwide class because this Court lacks authority to enforce discharge injunctions issued by other bankruptcy courts. Doc. 16-2, p. 7. In our Circuit, Courts have routinely denied motions to strike class allegations as premature where the motion was couched in the class definition outlined in the complaint as skirting too closely to an inappropriate Rule 23 class certification analysis. *See Padilla*, 389 B.R. at 448; *Korman*, 503 F. Supp. 2d. at 762 (*citing Chong v. State Farm Mut. Auto Ins. Co.*, 428 F.Supp.2d 1136, 1146-7 (S.D. Cal. 2006) ("Defendant…moves to strike Plaintiff's class allegations…Plaintiff counters and, in an opposition that reads like a motion for a class certification, argues that her class allegations meet the standard set forth in Federal Rule of Civil Procedure. Both parties are getting ahead of themselves."). The Defendants herein are functionally proposing this Court strike the class allegations based upon a micro-Rule 23 analysis without the benefit of discovery. Courts that have addressed this have made it clear that such an analysis at this phase of litigation is not appropriate. *See Padilla*, 389 B.R. at 448; *Korman*, 503 F. Supp. 2d. at 762-763 (*citing Chong*, 428 F.Supp.2d at 1146-7.

Further, the Defendants fail to consider that the potential inability to maintain one class does not preclude Plaintiff from maintaining an alternative class. *Hughes v. Circle K Stores, Inc.* 740 F. Supp.3d 721, 728 (C.D. Ill. 2024) ("As discovery progresses, the class definition may very well need to be redefined and nothing in this Order precludes the Court from doing so.") (*citing Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B)"). This approach to establishing class size, following discovery, is relevant because Courts are not bound to the class definition of the original filed complaint. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). In *In Re*

*Padilla*, the Court noted that a class "definition can easily be adjusted at the class certification stage, if it is otherwise appropriate to certify a class." *Padilla*, 389 B.R. 448, n. 70 (*citing In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609, 614-616 (N.D. Cal. 2007)) (where a plaintiffs' class definition was "suspicious" and may have been improper, plaintiffs were provided the opportunity to seek certification following discovery.)

Defendants are silent in the Motion to Strike on whether the Plaintiff can maintain an alternative class. Defendants cite to several Fifth Circuit cases where motions to strike are permissively granted.[9] Even the Fifth Circuit case law cited by Defendants fails to address the circumstance where a smaller or more limited class *could* be contemplated. Instead, Defendants cite to cases where no alternative class whatsoever could be maintained and where no alternative class was timely proposed. *See Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2012 WL 6208385, at *10 (N.D. Tex. 2012) (where no class could be maintained under applicable Texas law); *Markey v. Louisiana Citizens Fair Plan*, 2008 WL 5427708, at *2-5 (where no class could be maintained); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d. 443, 445 (5th Cir. 2007) (the court did not consider the alternative proposed two class option because the option was first raised on appeal). The Defendants simply rest on the position that no nationwide class can exist and that the claims by Plaintiff are "meritless." Doc. 16, ¶ 7.

In the case herein, an alternative class could exist. The Plaintiff, upon completing discovery, could elect a smaller class that indisputably falls within the jurisdiction of this Court, such as violations of bankruptcy discharge orders entered solely in the Middle District of Pennsylvania. *See Padilla*, 389 B.R. 448, n. 70; *Hughes*, 740 F. Supp. 3d at 728; *Robidoux*, 987 F.2d at 937. However, the class definition and the breadth of the class cannot be established

---

[9] In the sole Third Circuit authority cited by Defendant, *In Re Padilla*, 389 B.R. 409 (Bankr. E.D. Pa. 2008), the Court denied the Motion to Strike Class Allegations as premature.

without discovery and a decision regarding the certification of that class cannot be made until a class certification motion has been filed and heard by this Court.

For the foregoing reasons, the Motion to Strike the Class Allegations is premature. However, the analysis need not, nor should, stop at the potential for an alternative class as the sole grounds for denying the Motion to Strike Class Allegations.

### 3. The Court's Authority Over a Nationwide Class

More problematic for the Defendants' Motion to Strike, this Court is unpersuaded by the Defendants' argument that it lacks jurisdiction over a nationwide class. On the contrary, the Court finds that it does have subject matter jurisdiction over a nationwide class for discharge injunction violations, so long as the Plaintiff's sole source of relief is not a nationwide contempt judgment. *See Bruce v. Citigroup, Inc.*, 75 F. 4th 297, 306 (2d. Cir. 2023) ("A bankruptcy court's civil contempt authority does not extend to other bankruptcy courts' discharge orders in a nationwide class action."); *In Re Beck*, 283 B.R. 163 (Bankr. E.D. Pa 2002) (holding that the bankruptcy court did not have authority to exercise jurisdiction over a nationwide class rooted in civil contempt of discharge orders entered in other judicial districts); *In Re Golden*, 671 B.R. 544, 629-636 (Bankr. E.D.N.Y. 2025) (holding that while the bankruptcy court may not exercise jurisdiction over a nationwide class seeking a contempt judgment, the Court may exercise jurisdiction over a nationwide class for the purposes of declaratory judgment or injunctive relief); *In Re Anderson*, 668 B.R. 753, 778 (Bankr. S.D.N.Y. 2025) (holding that while the bankruptcy court may not utilize their civil contempt authority, the *Bruce* Court did not foreclose alternative paths for prosecuting nationwide discharge injunction violations claims).

### i. Jurisdiction is a Threshold Issue

Bankruptcy Rule 7023 authorizes class actions in bankruptcy court so long as certain criteria are met, specifically the Bankruptcy Court must have subject matter jurisdiction of the claims and the claimants. *See In Re Porter*, 295 B.R. 529, 538 (Bankr. E.D. Pa. 2003) (*citing In re Whittaker*, 84 B.R. 934 (Bankr. E.D. Pa. 1988). Subject matter jurisdiction is a "threshold determination" and should be addressed at the earliest possible stages. *Ajasa*, 627 B.R. at 21 (*citing to In Re BDC 56, LLC*, 330 F.3d 111,118 (2d Cir. 2003). In *Ajasa*, the Court was clear that "[s]ubject matter jurisdiction is foundational, and serves as the starting point for everything that a federal court can do. When that question is raised it must be addressed, and promptly. Where it is lacking, the court cannot proceed." *Id*. at 10.

### ii. Sources of Bankruptcy Court Jurisdiction

The bankruptcy court derives jurisdiction from 28 U.S.C. §1334. Specifically, the district court grants bankruptcy courts jurisdiction over two (2) bankruptcy related matters: (i) "original and exclusive jurisdiction of all cases under title 11" and (ii) "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). "Section 1334(b) grants subject matter jurisdiction over any debtor claim that falls within the court's 'related to,' 'arising in,' or 'arising under' jurisdiction, regardless of where the claimant's bankruptcy petition was filed." *In re Golden*, 630 B.R 896, 921 (Bankr. E.D.N.Y. 2021) (alteration in original) (*quoting Cano v. GMAC Mortg. Corp (In re Cano)*, 410 B.R. 506, 551 (Bankr. S.D.Tex. 2009)).

This jurisdiction, however, must also be viewed in light of "home court" limitations under 1334(e). Specifically, §1334(e) provides the exclusive power to "control and distribute property of the estate without requiring it to determine the extent of the property of the estate." *In Re Noletto*,

244 B.R. 845, 854 (Bankr. S.D. Ala. 2000). The exclusive jurisdiction under §1334(e)'s "home court" is to be construed narrowly and applied only to *in rem* questions, such as those related to dealing with estate property, and does not divest jurisdiction where dealing with *in personam* violations of the discharge. *See In Re Krause*, 414 B.R. 243, 255-256 (Bankr. S.D. Ohio 2009); *In Re Homaidan*, 650 B.R. 372, 405 (Bankr. E.D.N.Y. 2021); *Golden*, 630 B.R. at 913-914; *Noletto*, 244 B.R. at 854 ("1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code"). As the *Golden* Court recently found:

> "[I]f bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules. This would ascribe to Congress the intent to categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a clear indication of such intent." *In re Golden*, 630 B.R. at 922 (*quoting Wilborn v. Wells Fargo Bank, N.A. (In Re Wilborn)*, 609 F.3d. 748,754 (5th Cir. 2010) As one court observed in denying a motion to dismiss a putative nationwide class action asserting violations of the statutory bankruptcy discharge, '[t]he Court has the power to provide all of the relief requested.' *Vick v. NCO Financial Systems, Inc.*, 2010 WL 1330637, at *4 (E.D. Tex 2010)."

*In Re Golden*, 671 B.R. 544, 635 (Bankr. E.D.N.Y. 2025).

Further, District Courts grant broad jurisdiction over bankruptcy matters to the bankruptcy court pursuant to 28 U.S.C. §157. Section §157 provides that, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. §157(b)(1). Actions related to the discharge are undoubtedly a core proceeding. *See In Re Haynes*, 2014 WL 3608891, *7 (Bankr. S.D.N.Y. 2014) ("[A] 'core proceeding' includes the enforcement of the discharge, there being few matters as 'core' to the basic function of the bankruptcy courts as the enforcement of the discharge.")

Additionally, §105 grants bankruptcy courts "broad remedial authority." *Cano*, 410 B.R. at 539; *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007). Specifically,

> The Court may issue any order, process, or judgement that is necessary or appropriate to carry out the provision of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination *necessary to enforce or implement court orders or rules, or to prevent abuse.*

11 U.S.C. §105(a) (emphasis added). This authority under §105 has been interpreted to give bankruptcy courts broad discretion as to the types of remedies available. "Therefore, the plain meaning of §105(a) encompasses *any* type of order, whether, injunctive, compensative, or punitive, as long as it is 'necessary or appropriate to carry out the provisions of the Bankruptcy Code.'" *Cano*, 410 at 539 (*quoting Jove Eng'g, Inc.*, 92 F.3d 1539, 1554 (11th Cir, 1996); *In Re Gervin*, 334 B.R. 854, 857-858 (Bankr. W.D. Tex. 2005); *In Re Harris*, 297 B.R. 61, 70-71 (Bankr. N.D. Miss. 2003).

### iii. Bankruptcy Court Jurisdiction and Nationwide Classes.

The crux of the issue in this matter is nationwide violations of the discharge injunction entered pursuant to §524(a)(2). While the enforcement of the discharge orders issued by a Court "cannot be reasonably questioned," the matter herein turns on whether there exists authority to enforce the discharge injunction on a nationwide basis. *Cano*, 410 B.R. at 540-541. The argument set forth by the Plaintiff in favor of permitting the exercise of jurisdiction is that the discharge order is a product of statute and not individual construction subject to the interpretation of the individual judge. Doc. 41, p. 6. Defendant argues against permitting the enforcement of discharge orders from other Courts because the equitable powers of the bankruptcy court are limited to the same kind of civil contempt authority as other Courts and therefore the Court issuing the discharge order has sole jurisdiction over the enforcement of that order. Doc. 16-2, p. 8.

The Court in *Cano* found that the use of the Court's equitable powers was "rooted in the principle that courts should use equitable powers to avoid 'extensive and needless satellite

18

litigation.'" *Cano*, 410 B.R. at 541 (*quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991). Based upon the ability of the bankruptcy court to fashion a remedy under §105, it should be unsurprising that bankruptcy courts across the country have permitted nationwide classes for a wide range of core bankruptcy claims. *Id*. at 542. *In Re Golden*, 671 B.R. 544 (Bankr. E.D.N.Y. 2025); *Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. 2014); *Sheffield v. HomeSide Lending, Inc.*, 281 B.R. 24 (Bankr. S.D. Ala. 2000) (certifying nationwide class for creditor's failure to disclose post-petition fees and costs in proofs of claim); *Noletto v. NationsBanc Mortgage Corp.*, 281 B.R. 36 (Bankr. S.D. Ala. 2000); *Sims v. Capital One Fin. Corp.*, 278 B.R. 457, 486 (Bankr. E.D. Tenn. 2002) ("the better reasoned view is that there is bankruptcy subject matter jurisdiction over class action claims invoking substantive bankruptcy rights.")

However, limits have been placed on the use of the bankruptcy court's contempt authority as means for a nationwide class to obtain relief in the bankruptcy court. In *Taggart v. Lorenzen* the Supreme Court held that the 524(a)(2) injunction, as well as the broader §105 powers, "bring with them the 'old soil'" traditionally used to enforce civil contempt judgments arising out of injunctions. *Taggart v. Lorenzen,* 587 U.S. 554, 560 (2019) (*citing Hall v. Hall*, 138 S. Ct 1118, 1128 (2018)). The Court went on to state that the Bankruptcy Code does "not grant courts unlimited authority to hold creditors in civil contempt" and that the bankruptcy statutes bring with them the "traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Id* at 561.

The Court in *Bruce v. Citigroup, Inc.* found the limiting language in *Taggart* instructive and applied this limited contempt framework to a request for certification of a nationwide class. *Bruce v. Citigroup, Inc.*, 75 F.4th 297 (2d Cir. 2023). In interpreting *Taggart*, the *Bruce* Court found that "*Taggart* therefore provides a framework for analyzing the limits of a bankruptcy

19

court's civil contempt authority. Courts should understand that authority as coextensive with –not greater than -- the civil contempt authority wielded by courts outside of bankruptcy." *Id*. at 303. Arising out of this interpretation, the *Bruce* Court determined that a Bankruptcy Court would be subject to the same equitable limitations of any other Court, specifically that civil contempt orders must be enforced by the issuing Court. *Id*. at 303-304. "The civil contempt power is, at its core, uniquely personal to each court." *Id*. at 304. The Court in *Bruce* held that "we decline to expand the availability of a bankruptcy court's civil contempt authority to any similarly aggrieved party, anywhere in the country, that comes before one court seeking relief from an alleged contemnor's comparable affront in a different court." *Id*. The Court went on to suggest that to do so "would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." *Id*. (*quoting Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012).

The *Bruce* court acknowledged the statutory nature of the discharge order, specifically that discharge orders are issued on a standard national form. *Id*. However, following *Taggart*, the statutory origin of the discharge order did not change the manner in which the order is enforced and rejected the assertion that standardization of discharge orders permits the interpretation of that Order to be uniform. *Id*. at 304-305. The *Bruce* court found the issuing court to be particularly important where determining appropriate sanctions, not based upon the existence of a violation of the discharge order, but also the nature of the violation, the record of any prior violations, and consideration of good or bad faith that may be derived from the unique perspective of the issuing Court. *Id*. at 305. In the end, the *Bruce* Court denied the class finding that '[a] bankruptcy court's civil contempt authority does not extend to other bankruptcy courts' discharge orders in a nationwide class action." *Id*. at 306.

### iv.  This Court has jurisdiction over a nationwide class with limitations.

While the Defendant in this matter would have *Bruce* and *Taggart* act as a broad bar on all nationwide classes within the bankruptcy court, that is not how the Court ruled in *Bruce*.  The *Bruce* opinion made clear that this Court's *contempt authority* may not reach beyond the Middle District of Pennsylvania; however, it explicitly declined to rule on the authority of bankruptcy courts to issue declaratory or injunctive relief on a nationwide basis. *Bruce* 75 B.R. at 306, n. 9. ("Whether and to what extent relief short of contempt sanctions is available in the case of a discharge violation for which a fair ground of doubt remains is a question for another day.") The Second Circuit left open the door for plaintiffs to seek an alternative path forward for a nationwide class on discharge injunction violations.

While the *Bruce* Court declined to opine on the availability of other pathways to a nationwide class in discharge injunction violations, other Courts have recently explored those alternatives.  In *In Re Anderson*, the Court held specifically that "the *Bruce* court did not foreclose the possibility of relief (including declaratory judgment) for violation of the Section 524(a)(2) Injunction outside of a claim for contempt." *In Re Anderson*, 668 B.R. 753, 778 (Bankr. S.D.N.Y. 2025).  In *Anderson*, the Defendant, following the *Bruce* decision, argued that no meaningful difference existed between a finding of contempt and a declaration that a party has violated the discharge injunction. *Id*. at 783-784. The *Anderson* court did not find this persuasive. *Id*. at 784-785.  The Court instead held that the distinction between a contempt claim and a proposed declaratory judgment claim is not in the applicable law, but instead in the "redressability" of that violation and the form of relief that may be sought for the violation, as a result amending the complaint to conform to *Bruce* was not futile. *Id*.  Further, *Anderson* found the frequent use of

declaratory judgments in a class action context was consistent with a *Taggart* "old soil" analysis requiring the use of traditional injunction enforcement.[10]  *Id*. at 785-786.

The Court in *Golden* followed this approach, finding that while the contempt option for seeking a nationwide class was unavailable pursuant to *Bruce*, the availability of a potential declaratory judgment action preserved the opportunity for a nationwide class. *In Re Golden*, 671 B.R. 544 (Bankr. E.D.N.Y. 2025).[11]  The Court in *Golden* found that the *Bruce* Court "took care" and was "careful to explain that the decision addressed *only* the plaintiff's motion for contempt." *Id*. at 629.

The Defendants in this matter rely heavily on *Bruce* to eliminate any plausible relief as a nationwide class before this Court.  However, their interpretation of *Bruce* fails to consider the Bankruptcy Court's ability to craft alternate remedies under §105.  *See Cano*, 410 B.R. at 542. The Defendants argue in their response to the Notice of Supplemental Authority, that *Golden* can be distinguished from this case because the sole relief set forth in the Complaint is a request for a contempt judgment.[12]  Doc. 51, p. 2.  The Complaint in the instant matter is seeking a contempt judgment pursuant to §105(a) and, to be clear, this Court cannot exercise civil contempt authority over discharge orders entered in other jurisdictions. *See Bruce*, 75 F.4th at 306; *Golden*, 671 B.R. at 629-630; *Anderson*, 668 B.R. at 778.  However, the Complaint also requests non-specific

---

[10] The motion at issue in *Anderson* was a Request to Amend the Complaint in order to be consistent with the *Bruce* decision.  The opportunity to amend the complaint should be "freely given" barring bad faith, undue prejudice to the opposing party, undue delay, or futility of the amendment. *Anderson*, 668 B.R. at 779.  As none of those elements were present, leave to amend the complaint to conform to clarify the inclusion of a Declaratory Judgment claim was permitted.  *Id*. at 789.

[11] The Plaintiff in *Golden* took great pains in the Complaint to be specific with regard to requests for injunctions and the type of declaratory relief that Plaintiffs were seeking.  In *Golden*, the Court meticulously reviewed the complaint against both the *Bruce* decision and the *Anderson* decision and held that the avenue of declaratory relief requested in the complaint permitted the certification of a nationwide class. *Golden*, 671 B.R. at 628-637

[12] The Defendants are silent as to whether a declaratory judgment or injunctive relief is the sole remedy available as a nationwide class for a discharge injunction violation.

declaratory relief and "Injunctive relief prohibiting Defendants from continuing to collect discharged debts." Doc. 2 ¶ 40, ¶ C. While this request is not as robust as the request for alternative relief in *Golden*, it is not wholly absent from the Complaint either and therefore there exists a request for alternative relief in this case. As such, the sole remedy sought by the Plaintiff is not a contempt judgment.

Given the foregoing and because the Court may exercise jurisdiction over a potential alternative class and because the Court may exercise jurisdiction over non-contempt actions in the bankruptcy court as to a nationwide class, the Defendants have not met the burden of demonstrating that the requirements to maintain a class cannot be met without delving into a premature class certification analysis. Therefore, the Motion to Strike the Class Allegations is denied.[13]

---

[13] It is worth clarifying that this Court finding it has jurisdiction does not mean the Court will necessarily find in favor of the Plaintiff, simply that the Plaintiff is entitled to their day in court. The Court in *Cano* held, "[p]erhaps each member of the putative class could individually seek sanctions pursuant to Rule 9011 or inherent civil contempt authority from the court in which they filed the bankruptcy petition. But §105 empowers this court to afford a remedy for the same conduct…The existence of subject matter jurisdiction only authorizes this Court to consider class relief; it does not pre-ordain the outcome." *Cano*, 410 B.R. at 542. This Court agrees.

## IV. CONCLUSION

For the reasons set forth above, the Court grants the Motion to Dismiss the Complaint as to the Department of Treasury and Denies the Motion to Strike the Class Allegations. The Court hereby extends the deadline for responsive pleadings by the Defendant, United States Department of Agriculture, to December 10, 2025.

Appropriate orders for each motion shall be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: November 12, 2025